**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

MARCUS GORDON SHABAZZ
ADC #92909                                                                                    PLAINTIFF

V.                                            2:08CV00200 JMM/JTR

LARRY NORRIS, Director,
Arkansas Department of Correction, et al.                              DEFENDANTS

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James

M. Moody.  Any party may serve and file written objections to this recommendation.  Objections

should be specific and should include the factual or legal basis for the objection.  If the objection

is to a factual finding, specifically identify that finding and the evidence that supports your

objection.  An original and one copy of your objections must be received in the office of the United

States District Clerk no later than fourteen (14) days from the date of the findings and

recommendations.  The copy will be furnished to the opposing party.  Failure to file timely

objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or

additional evidence, and to have a hearing for this purpose before the United States District Judge,

you must, at the same time that you file your written objections, include a "Statement of Necessity"

that sets forth the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence to be proffered at the requested hearing before the

United States District Judge was not offered at the hearing before the Magistrate Judge.

3.   An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## I. Introduction

Plaintiff, Marcus Gordon Shabazz, is a prisoner in the Cummins Unit of Arkansas Department of Correction. He has commenced this *pro se* § 1983 action alleging that, while he was confined in the East Arkansas Regional Unit ("EARU"), several employees of the Arkansas Department of Correction ("ADC") and Correctional Medical Services, Inc. ("CMS") violated his constitutional rights when they: (1) failed to protect him from being attacked by another inmate; (2) did not provide him with adequate medical care for the injuries he sustained in that attack; and (3) subjected him to inhumane conditions of confinement when they denied him a mattress for thirty-seven days.[1] *See* docket entries #2, #11, and #17.

---

[1]  The ADC Defendants are: (1) ADC Director Larry Norris, (2) Warden Greg Harmon, (3) Assistant Warden Steve Outlaw, (4) Major Jeremy Andrews, (5) Captain Moses Jackson, (6) Lieutenant James Crumpton, (7) Sergeant David Maney, (8) Sergeant Jerry Henry, (9) Correctional Officer Christopher Smith, and (10) Correction Officer Brian Bettinger.

The CMS Defendants are: (1) Nurse Waits, (2) Dr. Richard Clark, and (3) Health Administrator Charlotte Green; and (4) Nurse Jane Doe.

The CMS Defendants have filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Facts.  *See* docket entries #119, #120, and #121.  Plaintiff has filed a Response, a Brief in Support, a Statement of Disputed Facts, and Exhibits.  *See* docket entries #130, #131, #132, and #133.  The CMS Defendants have filed a Reply.  *See* docket entry #137.

The ADC Defendants have filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Facts.  *See* docket entries #124, #125, and #126.  Plaintiff has filed a Response, a Brief in Support, a Statement of Disputed Facts, and Exhibits.  *See* docket entries #1401,  #141, #142, and #143.   The CMS Defendants have filed a Reply, and Plaintiff has filed a Surreply. *See* docket entries #144 and #145.

Before analyzing the merits of these Motions, the Court will briefly summarize the relevant, undisputed facts.

On April 10, 2007, Plaintiff got into a fight with another inmate at the EARU.   *See* docket entries #121, #126, #132, and #142.  During the fight, Plaintiff suffered several knife wounds, including cuts to his cheek, neck, and chest.  *Id.*  After the fight, Plaintiff was taken to the prison infirmary where Defendant Waits treated and bandaged his wounds. *Id.*

Plaintiff was then placed on behavior control status, pending an investigation of the fight. *See* docket entry #126, Exs. G and H.  Pursuant to an ADC policy, while on behavior control status, Plaintiff was given a blanket, but no mattress.  *Id.*

On April 13, 2007, after a disciplinary hearing, Plaintiff was convicted of fighting.  *See* docket entry #126, Ex. E.  As punishment, he was ordered to spend thirty days in punitive isolation. *Id.*  While in punitive isolation, Plaintiff  was suppose to receive a mattress from 7:00 p.m. until 7:00 a.m.  *Id.* at Exs. H and I.  Mattresses are distributed each evening by the night shift officer assigned

to punitive isolation. *Id.* The night sergeant assigned to the area is responsible for making sure that the mattresses have been properly distributed. *Id.* Plaintiff alleges that, during his entire thirty-day confinement in punitive isolation, he never received a mattress.[2] *See* docket entries #132 and #142.

While in punitive isolation, Plaintiff's check wound became infected. *See* docket entry #133, Exs. H, I, K, P. He went to the infirmary at least three times to have the wound cleaned and bandaged. *Id.* Plaintiff also received antibiotics and pain medications for his injuries. *Id.* Finally, a dentist examined Plaintiff on two occasions and determined that his cheek wound was properly healing. *Id.*

On May 14, 2007, Plaintiff completed his disciplinary term of punishment. *See* docket entry #126, Ex. H. Accordingly, he was transferred from punitive isolation to administrative segregation. *Id.* Plaintiff alleges that, while he was in administrative segregation, he again did not receive a mattress.[3] *See* docket entries #132 and #142.

On May 17, 2007, Plaintiff was returned to general population. *See* docket entry #126, Ex. H. Plaintiff alleges this was the first time in 37 days that he was allowed to have a mattress. *See* docket entries #132 and #142.

## II. Discussion

### A.      Exhaustion of Administrative Remedies

Both the CMS and the ADC Defendants argue that they are entitled to summary judgment because Plaintiff failed to fully and properly exhaust his administrative remedies. The Prison

---

[2] Defendants do not specifically admit or deny this allegation.

[3] Defendants do not specifically admit or deny this allegation. Additionally, they have not clarified how many hours of the day a prisoner on administrative segregation is allowed to have a mattress.

Litigation Reform Act provides, in pertinent part, that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).   The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007);[4] *see also Woodford v. Ngo*, 548 U.S. 81-89-91 (2006).   Importantly, the Eighth Circuit has clarified that the PLRA requires inmates to:   (1) *fully* and *properly* exhaust their administrative remedies as to *each claim* mentioned in the complaint; and (2) complete the exhaustion process prior to filing an action in federal court.   *See Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000) (emphasis added).

To fully exhaust administrative remedies, within the ADC, a prisoner must file: (1)  an informal resolution with the designated problem solver within 15 working days of the incident; (2) a grievance with the Warden within 3 working days of the denial of the informal resolution; and (3) an appeal to the ADC Deputy/Assistant Director within 5 working days of the Warden's decision. *See* docket entry #121, Ex. C at 3-16 (ADC Adm. Dir. 04-01 § IV(E) through (G) (February 1, 2004 2007)).   Importantly, an inmate may proceed to the next step in the process if he does not receive a timely response to his informal resolution or grievance.[5]

_____

[4] In *Jones v. Bock*, 549 U.S. 199, 211 (2007), the Court emphasized that: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."

[5] Specifically, an inmate may file a grievance if he does not receive a response to his informal resolution within 3 working days. *Id.*  Similarly, an inmate may file an appeal if he does

### 1. Plaintiff's Attempt to File an April 2007 Grievance

Plaintiff contends that, on April 17, 2007, he filed an informal resolution, which alleged that: (1) unspecified individuals had failed to protect him from being attacked on April 10, 2007; (2) he received inadequate medical care for his injuries; and (3) he did not have a mattress.   *See* docket entry #133, Exs. A and B.  Plaintiff claims that he did not receive a response to that informal resolution.  *Id.*

On April 30, 2007, Plaintiff allegedly filed a grievance reasserting those claims.  *See* docket entry #133, Ex. C.  Plaintiff also contends that he did not receive a response that grievance.[6]

On June 4, 2007, Plaintiff wrote a letter to the ADC Deputy/Assistant Director alleging that prison official had not properly responded to his April 2007 informal resolution and subsequent grievance.  *See* docket entry #133, Ex. D.  The ADC Deputy/Assistant Director forwarded the letter to Defendant Warden Harmon.  *Id.* at Ex. E.  It is unclear what action, if any, Defendant Harmon took in response to Plaintiff's letter.

It is well settled that a prisoner must exhaust his administrative remedies in accordance with the prison's procedural requirements.  *See Jones v. Bock*, 549 U.S. 199, 218 (2007) (explaining that:

---

not receive a response to his grievance within 20 working days. *Id.*

[6] Plaintiff's copy of the informal resolution is completely illegible.  *See* docket entry #133, Ex. A. However, Plaintiff has filed a sworn declaration stating, word for word, what the informal resolution allegedly says. *Id.,* Ex. B. Additionally, Plaintiff testified in his deposition that he filed, a resolution which covered all three claims on an unspecified date.  *See* docket entry #121, Ex. A at 5-6.

Plaintiff's copy of the grievance does not reflect a grievance number or a date on which it was received by the Warden's office.  *See* docket entry #133, Ex. C.  Additionally, Defendants have filed two sworn Affidavits declaring that they have no record of receiving this alleged grievance. *See* docket entry #121, Exs. B and C.  The Court will construe this factual dispute in the light most favor to Plaintiff, and assume that he did, in fact, file the April 17, 2007 informal resolution and April 30, 2007 grievance.

"it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) (holding that proper exhaustion demands compliance with the prison's deadlines and other critical procedural rules).

Plaintiff's alleged April 17, 2007 informal resolution was improper because it raised more than one claim. *See* docket entry #121, Ex. C at 3-16 (ADC Admin. Dir. 04-01, § IV (D)(2), specifying that informal resolutions and grievances must "only address one problem/issue," and that if an "inmate wishes to present several issues, he or she must do so on separate forms").

Similarly, Plaintiff's alleged April 30, 2007 grievance was improper because it also raised more than one claim, and it was filed more than 3 working days after the informal resolution was deemed denied.[7] *Id. (*ADC Admin. Dir. 04-01, § IV (E)(8), providing that an informal resolution is deemed denied if it is not responded to within 3 working days, and that an inmate has 3 work days from when an informal resolution is denied, or deemed denied, to file a grievance).

Finally, Plaintiff's June 4, 2007 appeal was improper because it raised more than one claim, and it was untimely filed.[8] *Id.* (ADC Admin. Dir. 04–1, § IV(F)(8) and (9), providing that a grievance is deemed denied if the Warden fails to respond to it within 20 working days); (ADC Admin. Dir. 04–1, § IV(G) providing that an inmate must file an appeal within five working days of the denial of a grievance or when the grievance is deemed denied). Thus, Plaintiff's attempts to file a grievance, in April of 2007, did not satisfy the PLRA's exhaustion requirement as to any of

---

[7]  The informal resolution was filed on April 17, 2007.  When Plaintiff did not receive a response, it was deemed denied three days later, on April 20, 2007.  Plaintiff's grievance was due three working days later, on April 25, 2007.  However, he admits that he did not file the grievance until April 30, 2007.

[8]  The grievance was filed on April 30, 2007. When Plaintiff did not receive a response, that grievance was deemed denied twenty days later, on May 20, 2007.  Plaintiff then had five working days, or until June 1, 2007, to file his appeal. He did not do so until June 4, 2007.

the claims he has raised in this action.

### 2.      Grievance EA 08-1331

On August 29, 2008, Plaintiff filed grievance EA 08-1331, alleging that prison officials failed to respond to his April 2007 informal resolution and grievance.  *See* docket entry #121, Ex. C at 25-27.  Grievance EA 08-1331 was denied, and Plaintiff appealed.  *Id.*  The ADC Deputy/Assistant Director denied Plaintiff's appeal because his grievance was filed more than one year after the alleged incident.  *Id.*

The Court concludes that grievance EA 08-1331 was not properly exhausted for two reasons. First, the grievance was directed at an alleged failure of the grievance system, and not the merits of any of the three claims that Plaintiff has raised in this action. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (holding that a prisoner does not have a constitutional right to enforce compliance with internal prison rules or regulations); *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (holding that a prison official's failure to properly respond to a grievance, standing alone, is not actionable under § 1983).  Additionally, because grievance EA 08-1331 was not timely filed, it was not in compliance with the ADC's procedural requirements. *See Jones,* 549 U.S. at  218 (holding that a prisoner must exhaust his administrative remedies in accordance with the prison's procedural requirements).  Accordingly, grievance EA 08-1331 did not satisfy the exhaustion requirement as to any of the claims Plaintiff has raised in this action.

### 3.      Grievance EA 07-00609

On May 17 and 18, 2007, Plaintiff filed an informal resolution and grievance EA 07-00609, alleging that Defendant Captain Moses Jackson, and several other individuals (who are *not*

Defendants in this action) failed to provide him with a mattress during the 37 days he was in punitive isolation and administrative segregation. *See* docket entry #121, Ex. C at 18-23. Grievance EA 07-00609 was denied, and the parties *agree* that Plaintiff timely and properly appealed the denial to the ADC Assistant/Deputy Director. *Id.*

The ADC grievance policy requires an inmate to name *every* prison employee involved in the incident. *See* docket entry #121, Ex. C at 3-16(ADC Admin. Dir. 04-01 at § IV(E)(3) and (F)(3)). Consistent with that policy, the informal resolution and grievance forms specifically state that a prisoner must name every prison employee involved in the incident. *Id.,* Ex. C at 18-19. Plaintiff only named Defendant Jackson in his informal resolution and grievance EA07-00609. He did *not* name or otherwise identify any of the other Defendants. *Id.*

Accordingly, Plaintiff has timely and properly exhausted his administrative remedies *only* in regard to his conditions of confinement claim against Defendant Jackson. Because they were not named in grievance EA07-00609, all other Defendants and claims should be dismissed from this action, without prejudice.

**B.**    **Inhumane Conditions of Confinement Claim against Defendant Jackson**

Plaintiff alleges that Defendant Jackson subjected him to inhumane conditions of confinement by failing to provide him with a mattress for 37 consecutive days. *See* docket entries #2, #11, and #17.

 The "Constitution does not mandate comfortable prisons" or that prisons be "free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Additionally, only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis" of an Eighth Amendment violation. *Hudson v. McMillian,* 503 U.S. 1, 9 (1992).

Thus, in order to prevail on an Eighth Amendment conditions of confinement claim, a prisoner must prove that: (1) objectively, the deprivation was sufficiently serious to deprive him of the minimal civilized measures of life's necessities, or to constitute a substantial risk of serious harm to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to the risk of harm posed by the deprivation. *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004); *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998).

### 1.      Objectively Serious Deprivation

As to the first factor, the Eighth Circuit has held that depriving a prisoner of a mattress for 4 consecutive days does not constitute an objectively serious deprivation. *See, e.g., O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 83-84 (8th Cir. 1996); *Williams v. Delo*, 49 F.3d 442, 444 (8th Cir. 1995). Of course, in this case, Plaintiff alleges that he was without a mattress for 37 consecutive days. *See Smith v. Copeland*, 87 F.3d 265, 267-68 (8th Cir. 1996) (holding that the duration of the alleged inhumane conditions is a "critical factor" in determining whether a constitutional violation has occurred). Plaintiff also claims that the lack of a mattress caused his cheek wound to become infected; gave him a headache; and exacerbated the pain caused by his serious knife wounds. *See* docket entry #126, Ex. F.78–79; docket entry #141. The Court concludes that denying Plaintiff a mattress for 37 consecutive days is "objectively" a deprivation "sufficiently serious to deprive him of the minimal civilized measures of life's necessities, or to constitute a substantial risk of serious harm to his health or safety."

### 2.      Subjective Deliberate Indifference

As to the second element, Plaintiff testified in his deposition that he told Defendant Jackson,

while he was making his security rounds on an *unspecified* date, that he was not getting his mattress at night.  *See* docket entry #126, Ex. F at 20.  According to Plaintiff, Defendant Jackson told him to "take it up with the night shift."[9] *Id.*

It is well settled that a supervisor, such as Defendant Jackson, may be held liable in a § 1983 action if he was made aware of a problem, but fails to take corrective action. *See Lenz v. Wade*, 490 F.3d 991, 995-96 (8th Cir. 2007); *Ottman v. City of Independence,* 341 F.3d 751, 761 (8th Cir. 2003). In this case, it is *undisputed* that, during April and May of 2007, Defendant Jackson was one of two captains assigned to supervise the *day* shift at the EARU.[10]  *See* docket entries #143 at  Ex. 11 and #144.  It is also *undisputed* that mattresses were to be distributed by the *night* officer and sergeant assigned to the punitive isolation area.  *See* docket entry #126, Ex. I.

On the one occasion Plaintiff complained to Defendant Jackson about not getting a mattress, Defendant Jackson properly advised Plaintiff to raise the issue with the night shift personnel, because they were responsible for providing prisoners in punitive isolation with mattresses from 7:00 p.m. to 7:00 a.m.  Importantly, neither in his pleadings nor in his deposition does Plaintiff ever allege that he spoke to Defendant Jackson a second time about the problem.[11]  These undisputed

---

[9]  In a statement submitted during the investigation of grievance EA07-00609, Defendant Jackson stated that Plaintiff *never* complained to him about not having a mattress, nor did any prison staff advise Defendant Jackson that Plaintiff did not have a mattress. *See* docket entry #126, Ex. C at 4.  The Court will construe this factual dispute in Plaintiff's favor and assume that he did, in fact, have *one conversation* with Defendant Jackson, on an unspecified date, about Plaintiff's alleged failure to receive a mattress.

[10]  Captain *Dennis* Jackson, and not Defendant *Moses* Jackson, was the captain assigned to supervise the night shift at the EARU in April and May of 2007. *See* docket entry #144.  On its face, this seems to suggest that Plaintiff may have named the wrong "Jackson" as a Defendant.

[11]  Additionally, Plaintiff did not clarify when the alleged conversation with Defendant Jackson occurred.  Thus, it is unclear whether Plaintiff did not have a mattress for another 4 days after their conversation (which, as previously discussed, would not be actionable) or for a greater

facts simply cannot support a supervisor liability claim against Defendant Jackson.   *See Lenz v. Wade*, 490 F.3d 991, 995-96 (8th Cir. 2007) (finding that a "single incident, or series of isolated incidents, usually provides an insufficient basis upon which to assign supervisor liability").

Thus, Defendant Jackson is entitled to summary judgment on Plaintiff's inhumane conditions of confinement claim, which should be dismissed, with prejudice.

### III.  Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.      The CMS Defendants' Motion for Summary Judgment (docket entry #119) and the ADC Defendants' Motion for Summary Judgment (docket entry #124) be GRANTED.

2.      Plaintiff's claims against Defendant Moses Jackson be DISMISSED, WITH PREJUDICE, and his claims against all other Defendants be DISMISSED, WITHOUT PREJUDICE.

3.       The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order & Judgment adopting this Recommended Disposition would not be taken in good faith.

Dated this 21st day of April, 2010.

_____

UNITED STATES MAGISTRATE JUDGE

---

period of time.